# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02605-JLK

DUANE R. ROBITAILLE,

    Plaintiff,

v.

JAY SPITZER,

    Defendant.

_____

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

**Kane, J.**

### Introduction

On November 28, 2013, Plaintiff Duane Robitaille was on his way to Thanksgiving at his sister's home. Instead, he was arrested and taken into custody under a warrant issued on March 28, 2013. The warrant was based upon the investigation and affidavit of Detective Jay Spitzer, the defendant in this case. Detective Spitzer stated in his affidavit that Duane Robitaille and Penny Robitaille had rented a Honda Generator on February 15, 2013, which the two had not returned.

In fact, Duane Robitaille was not with Penny Robitaille the day she rented the generator. The charges against him were dismissed on the basis of his factual innocence. Duane Robitaille brought this action under 42 U.S.C. § 1983, alleging that the false arrest violated his rights under the Fourth Amendment.

Detective Spitzer moves for summary judgment on grounds of qualified immunity. After reviewing the record and briefs submitted by the parties, this motion (Doc. 33) is **DENIED**.

**Factual Background**

On February 15, 2013, Penny Robitaille and a male companion rented a Honda Generator from United Rentals for a period of one day. (Denver Police Fraud Unit Case Filing Info. Form ("Fraud Unit Form"), Doc. # 40-1 at 4–5.) After Ms. Robitaille and her companion failed to return the rental and repeated attempts to get in contact with Ms. Robitaille failed, store manager Dale Sisneros reported the generator as stolen to the Denver Police Department. (*Id*. at 5) Responding to the report of the theft, Officer Thomas Green of the Denver Police Department met with Dale Sisneros on March 25, 2013. Officer Green's initial report explained that he "had met with the complainant, Dale Sisneros, who stated that he had rented the generator to the two suspect (sic)" and that the "two suspects used the female's Nebraska Driver's License to rent the generator." (*Id.* at 8.) Green listed both Penny Robitaille and Duane Robitaille as suspects in the case. (*Id.* at 9–10). It is unclear how Green falsely determined that Duane Robitaille was Ms. Robitaille's husband.

The next day, Detective Gary Teiken was assigned to the follow-up investigation. (Teiken Supp. Rep., Doc.# 33-1 at 13.) Detective Teiken contacted Dale Sisneros, who "stated he did not get the male suspects (sic) name or identification, but got the impression he was married to Ms. Robitaille because they were talking about remodeling the son's house for a new grandchild." (*Id.* at 14.) Detective Teiken emailed Sisneros a Fraud Unit Theft of Rental Property Packet. (*Id.*) In his statement included in the packet, Sisneros did not refer to Duane Robitaille by name, but rather as "her husband" or "the gentleman." (Fraud Unit Form, Doc. # 40-1 at 1–5.)

Detective Teiken next queried Accurint and found a phone number for Darlene Robitaille. (Teiken Supp. Rep., Doc. # 33-1 at 14.) When Teiken called the number, a female

2

answered the phone and identified herself as Darlene Robitaille, Duane Robitaille's mother. (*Id.* at 14.) She informed the detective that her son had been divorced from Ms. Robitaille for two years, and that Duane Robitaille had not had any contact with her since the divorce. (*Id.*) She also told Detective Teiken that she was sure Duane was not with Ms. Robitaille as he does not live in the Denver area. (*Id.*)

On March 27, 2013 Detective Teiken learned that Detective Spitzer had also been assigned to the follow-up investigation. (*Id.*) After Teiken spoke with his sergeant, who contacted Detective Spitzer's sergeant, it was decided that Spitzer would handle the remainder of the investigation. (*Id.*) Teiken wrote a report of the work he had done and included it in the file that was transferred to Spitzer. (*Id.*)

On receiving the case, Detective Spitzer also phoned Dale Sisneros. In his affidavit submitted to the court in support of his motion for summary judgment, Spitzer paraphrases Sisneros as stating that "a husband and wife had rented a Honda generator" and that "the husband was present with Penny when the generator was rented and he had full knowledge of the rental." (Def.'s Summ. J. Aff., Doc. #33-1 Ex. A at ¶5.) In his March 28, 2013 affidavit for the arrest warrant, Detective Spitzer claimed that "Dale stated Penny and Duane rented a Honda Generator" and that "Duane was present with Penny when the rental was generated and he had full knowledge of the rental." (Warrant Aff., Doc. # 35-1 at 11.) The warrant was granted the same day. (Spitzer Supp. Rep., Doc. # 35-1 at 12.)

The day after Detective Spitzer signed the arrest warrant affidavit, Detective Teiken received notice that the generator had been pawned by Terry Cottonwood in Brighton, Colorado the same day that it was rented. (Teiken email to Spitzer; Doc. # 35-1 Pl.'s Ex. 4 at 1.) Within an hour of receiving this information, Teiken forwarded this notice via email to Spitzer, along

with a note stating "[t]he guy that pawned it is most likely the guy that was with Penny Robitaille when she rented the generator since it was pawned the same day it was rented." (*Id.*)

In his current affidavit, Detective Spitzer states that he does not recall reviewing Detective Teiken's notes regarding his conversation with Darlene Robitaille before drafting his March 28 arrest warrant affidavit. (Def.'s Summ. J. Aff., Doc.# 33-1 Ex. A at ¶12–13.) Nor does he recall receiving the email from Detective Teiken after the warrant was issued. (Def.'s Summ. J. Aff., Doc.# 33-1 Ex. A at ¶10–11.) The record does show that on April 1, 2013, Detective Spitzer called the shop where the generator had been pawned and confirmed the information from the pawn ticket, but took no action to further investigate the identity of Penny Robitaille's male companion or to inform the court that issued the warrant. (Spitzer Addt'l Supp. Rep., Doc. #35 -1 at 3.)

Duane Robitaille was taken into custody under the warrant on November 28, 2013 and posted a $5,000 bail the same day. (2d Jud. Dist. Inv. Rep., Doc. #35-1 at 8.) On March 18, 2014 the Denver District Court granted "Duane Robitaille's motion to determine factual innocense (sic)" and found that "Duane Robitaille . . . did not commit the offense in this case." (*Id.* at 8.) Plaintiff has now brought this action under 42 U.S.C § 1983.

## Relevant Law

Under 42 U.S.C. §1983, an individual can recover damages against:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

Government actors accused of violating an individual's rights under § 1983 can assert the affirmative defense of qualified immunity. Asserting qualified immunity protects government officials ''from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection of qualified immunity extends to a "mistake of fact, mistake of law, or a mixed question of law and fact." *Pearson v. Callahan*, 550 U.S. 223, 231 (2009). "Where the Defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled, in part, on other grounds by Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009).

The law governing the procedure for reviewing an affirmative defense of qualified immunity raised at summary judgment is well established in the Tenth Circuit. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (quoting *Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009)). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson,* 625 F.3d 686, 690 (10th Cir. 2010). Ultimately, the "relevant inquiry [is] whether the law put officials on fair notice that the described conduct was unconstitutional." *Id*.

The constitutional right at issue in this case is the Fourth Amendment's protection against unreasonable searches and seizures. In *Franks v. Delaware*, the Supreme Court established that an affiant's inclusion of a "false statement knowingly, or with reckless disregard for the truth" in an application for a warrant can form the basis for a Fourth Amendment violation. 438 U.S. 154, 171 (1978). In the Tenth Circuit, it is "a clearly established violation of the plaintiff's Fourth and Fourteenth Amendment rights to *knowingly or recklessly omit* from an arrest affidavit information which, if included, would have vitiated probable cause." *Stewart v. Donges,* 915 F. 2d 572, 582–83 (10th Cir. 1990) (emphasis added). Consequently, a reviewing court must make two separate determinations in evaluating whether a constitutional violation has been sufficiently alleged under this analysis. First, the court must determine whether the omitted information was material, such that if the information was included it would have "vitiated probable cause." *Id.* Second, the court must determine if the allegations establish the subjective element of the defendant's state of mind by giving rise to an inference of "knowing or reckless disregard for the truth." *Bruning v. Pixler*, 949 F.2d 352, 360 (10th Cir. 1991).

"*Franks* does not extend to immaterial omissions." *Stewart,* 915F.2d 572 at 581. In a Fourth Amendment claim where false evidence is included in a warrant, the court assesses whether, "if the affidavit's false material is set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks v. Delaware*, 438 U.S. 154, 156 (1978). When information is omitted from an affidavit, by contrast, probable cause is determined "by examining the affidavit as if the omitted information had been included" and assessing whether the affidavit would still have supported probable cause for the warrant. *Stewart*, 915 F.2d at 582 n. 13.

6

For the subjective state-of-mind element, a plaintiff need only raise an inference that the defendant behaved knowingly or recklessly. A plaintiff can show knowing behavior by establishing that "the affiant 'in fact entertained serious doubts as to the truth of his' allegations." *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991) (quoting *United States v. Williams,* 737 F.2d 594, 602 (7th Cir.1984)). Alternatively, "recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *Id.* (quoting *DeLoach v. Bevers,* 922 F.2d 618, 622 (10th Cir.1990)).

When alleging a claim for a constitutional violation involves demonstrating the defendant's state of mind — as the required element of demonstrating knowing or reckless behavior does here — and the plaintiff has alleged sufficient facts to raise such an inference, the defendant "must make a prima facie showing of the 'objective reasonableness' of the challenged conduct" to succeed with the affirmative defense of qualified immunity. *Bruning*, 949 F.2d at 356–57. An officer is entitled to qualified immunity unless "a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

**Analysis**

Under *Pearson,* this court is no longer bound to a rigid sequential framework for determining whether a constitutional violation occurred and then determining whether that right is clearly established. 555 U.S. at 242 (holding that the reviewing court should have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Accordingly, I first hold that under *Stewart* the knowing or reckless omission of material facts from an affidavit for an arrest warrant was a clearly established violation of the Fourth and Fourteenth Amendments at

7

the time Detective Spitzer completed his affidavit for an arrest warrant. Second, I find there is a factual dispute as to whether Detective Spitzer's specific actions in this case violated Duane Robitaille's constitutional rights, precluding the entry of summary judgment in Detective Spitzer's favor. While it is clear the omissions at issue were material, a factual question remains as to whether Spitzer made the omissions recklessly. Such factual disputes should be decided by a jury. Consequently, I deny Defendant's Motion for Summary Judgment.

For more than twenty years before Detective Spitzer omitted information from his affidavit to support a warrant for the arrest of Duane Robitaille, the Tenth Circuit has recognized it is "a clearly established violation of the plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause." *Stewart v. Donges,* 915 F. 2d 572, 582–83 (10th Cir. 1990).

Because the plaintiff met his burden to show that the constitutional right was clearly established at the time of the violation, I must now determine whether the plaintiff has alleged sufficient facts to make out this violation. This requires assessing (1) whether the information omitted was material and (2) whether the information was omitted knowingly or recklessly.

To determine whether information omitted from an affidavit is material, I am obligated to examine whether probable cause existed "in light of all the evidence, including the omitted information." *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). In his affidavit for the arrest of Duane Robitaille, Detective Spitzer mischaracterizes his conversation with Dale Sisneros. The affidavit says Spitzer called Dale Sisneros, and that "Dale stated . . . *Penny and Duane* rented a Honda generator" and that "*Duane was present with Penny* when the generator was rented and he had full knowledge of the rental." (Warrant Aff., Doc. # 33-1 at 15) (emphasis added).) What Spitzer now concedes Dale Sisneros actually said was that "*a husband*

8

and wife had rented a Honda generator" and that "*the husband* was present with Penny when the generator was rented and he had full knowledge of the rental." (Def.'s Summ. J. Aff., Doc. #33-1 at 12; Ex. A at ¶5 (emphasis added).)   Spitzer's affidavit also omits information regarding a phone call made by Detective Teiken to a woman identifying herself as Duane Robitaille's mother in which she explained that the couple had been divorced for two years, that Duane had not been in contact with Penny since the divorce, and that Duane did not live in Denver.  (Teiken Supp. Rep., Doc. # 33-1 at 14.)  Additionally, Spitzer omitted information that Dale Sisneros had previously reported to Detective Teiken that he had not "gotten the male suspects (sic) name or identification" and that Dale Sisneros's statement in the Theft of Rental Property  packet only referred to the man  accompanying Ms. Robitaille as "her husband" and "the gentleman." (Teiken Supp. Rep., Doc. # 33-1 at 14; Fraud Unit Form, Doc. # 40-1 at 3–5.)

In *Bruning,* the Tenth Circuit held that the officer's inclusion of a statement that a sexual assault victim "had the opportunity to view her assailant closely," but omission of the fact  "that the man was wearing a handkerchief that concealed his face from the bridge of his nose down" and that the victim  "only saw him briefly by the light of her dome light while he was crouched down in her back seat" was misleading because the omitted information "cast substantial doubt" on the victim's ability to identify her assailant. 949 F.2d  at 358.   The court found that "[t]he statements Defendants made in their affidavits and the information they omitted from those affidavits concerned facts that were 'clearly critical' to a finding of probable cause" and that "a factfinder could infer that Defendants made the statements and omitted the information with reckless disregard for the truth." *Id.* at 360. Here, a similar situation exists where Detective Spitzer's inclusion of false information and omission of material facts directly undermines whether probable cause existed to support a warrant to arrest Duane Robitaille. Although

9

Detective Spitzer is correct that he is entitled to rely on the information presented by other officers in that Officer Green had listed Duane Robitaille as a suspect, by the time Detective Spitzer received the file, at least three separate instances called into question whether the man with Penny Robitaille was in fact Duane Robitaille. These three instances are: (1) Detective Teiken's phone call with the woman who identified herself as Duane's mother indicating that they were divorced, no longer in contact, and that Duane Robitaille no longer lived in the Denver area; (2) that Sisneros stated to Detective Teiken he had "never gotten the name or identification" of the man with Ms. Robitaille; (3) that Sisneros's only reference to the man accompanying Ms. Robitaille in his statement was as "her husband" and "the gentleman." Taken together, and combined with the Detective Spitzer's own admission that Dale Sisneros had only referred to the man with Ms. Robitaille as "her husband" during their conversation, these omissions directly contradict Detective Spitzer's affidavit that "Dale stated Penny and Duane rented the generator " and that "Duane was present with Penny when she rented the generator and had full knowledge of the rental" (Def.'s Summ. J. Aff., Doc. #33-1 Ex. A at ¶5; Warrant Aff., Doc. # 33-1 at 15.) Because the inclusion of such information would invalidate the *only* assertion to support probable cause included in the affidavit — the implication that Dale Sisneros had identified Penny and Duane as the suspects — the omissions are material.

I also find that a jury could infer from the facts alleged in the record that Detective Spitzer was reckless in his omissions. *Bruning*, 949 F.2d at 360. Detective Teiken included notes that Spitzer either ignored or did not see and sent Spitzer an email that he does not recall. Further, Detective Spitzer's own conversation indicated that Dale Sisneros had not identified Duane Robitaille. From these facts, a reasonable jury could conclude Spitzer was on notice that further investigation was needed to determine the identity of Ms. Robitaille's accomplice and

Spitzer's affidavit mischaracterizing his conversation with Dale Sisneros and omitting material information was made in reckless disregard for the truth. Consequently, the plaintiff has successfully cleared both "hurdles" to defeat a motion for summary judgment under *Cox*.

Because Duane Robitaille has alleged facts that state a claim for a constitutional violation of the Fourth Amendment that includes a subjective element, the burden shifts back to Detective Spitzer to make out a "prima facie showing of the 'objective reasonableness' of the challenged conduct" such that the conduct would comport with the "reasonably well-trained officer standard." *Bruning,* 949 F.2d at 356–57 (10th Cir. 1991). In this, Detective Spitzer does not succeed because there is no showing of how his actions align with that of a reasonably well-trained officer.

Rather, Detective Spitzer's affidavit filed to support his motion for summary judgment largely refers to his state of mind. For example, detective Spitzer states that he "does not recall reviewing the notes about Detective Teiken's conversation with the woman who identified herself as Duane's mother." (Def.'s Summ. J. Aff., Doc. # 33-1 Ex. A at ¶ 12.) He also explains his decision to omit the conflicting information reported by Detective Teiken and Duane Sisneros because he found "Sisneros's comments to me and comments to the officers as they were memorialized in their respective reports to be reliable." (Def.'s Summ. J. Aff., Doc. #33-1 Ex. A at ¶ 5.) In his Reply, Spitzer argues that, at most, his erroneous connection of Duane Robitaille's name from Officer Green's report was negligent, and not sufficient to rise to a constitutional violation. (Doc. # 38 at 2.)

I find that Detective Spitzer's affidavit to the court and argument reveal a genuine dispute of material fact about Detective Spitzer's state of mind when he omitted material facts from the affidavit for Duane Robitaille's arrest. Determining whether Detective Spitzer's behavior was

reckless or merely negligent hinges upon an evaluation of the credibility of his explanations. "Weighing the credibility of witnesses is the province of the jury." *United States v. Legg*, 132 F.3d 43 (10th Cir.1997). It may be that a jury concludes that Detective Spitzer's explanation for his actions is credible and comports with the reasonably well trained officer standard. I will not, however, take this responsibility from the jury by deciding this case at summary judgment.

As a final note, I acknowledge that Defendant Spitzer points out that the law is not clearly established that Detective Spitzer was under a duty to investigate further or inform the court once he confirmed that the generator was pawned by Terry Cottonwood after the issuance of the arrest warrant. (Def.'s Summ. J. Aff., Doc. # 38 at 14.)  I could find no case pointing to such specific responsibilities. The *Cortez v. McCauley* case cited by the plaintiffs in support of this right is not applicable. 478 F.3d 1108 (10th Cir. 2007). In *Cortez,* police officers made a warrantless arrest of the plaintiff within minutes of a statement being made by a two year old child that her babysitter's boyfriend "had hurt her pee pee" without making further investigation. *Id.* at 1112–13. Although *Cortez* does stand for the proposition that an officer must make an investigation before an arrest, none of the particular issues implicated here, such as whether there is a continuing duty to investigate after a warrant is issued or a duty to inform the court, is addressed by that case. *Id.* at 1116–17.

Nevertheless, *Cortez* involved circumstances that would make the court more empathetic to the officers' decision to act quickly entirely absent from this case.  Namely, *Cortez* involved the potentially imminent threat created by allowing a child molester to remain at large.  Here, there was no comparable threat to public safety presented by tracking down a person who had allegedly failed to return a generator.  In light of this, and  in view of the cumulative evidence that Detective Spitzer had before him suggesting that Ms. Robitaille's male companion was not

Duane Robitaille, Detective Spitzer's failure to investigate and inform the court when he received further exculpatory information after the warrant was issued may establish a constitutional violation. I decline to rule on this issue because the matter will already be going to the jury due to the material dispute of fact remaining as to whether Detective Spitzer committed a constitutional violation by knowingly or recklessly omitting material facts from his affidavit for the arrest warrant of Duane Robitaille.

Defendant's Motion for Summary Judgment (Doc. 33) is DENIED.

Dated this 30th day of March, 2016.

_____
John L. Kane
Senior U.S. District Court Judge